Hawkins, J.,
delivered the opinion of the Court.
This is an action of trover, for the conversion of a lot of tobacco, instituted in the Circuit Court of Smith County, by Cornwell, against McClellan, and one Elias Reese.
The declaration contains two counts. The first is an ordinary count in trover. The second alleges, specially, “that on the — day of -, 1842, one J. C. Williams obtained a judgment against the defendant, Elias Reese, and Cordy Reese, for the sum of -- dollars— cents, before one H. B. Robb, then a Justice of the Peace of Smith County; that in default of the payment thereof, on the 5th of January, 1859, an execution issued upon said judgment, by E. W. Corn-well, a Justice for said County, which come to the hands of the plaintiff, as Constable for said County, on the day it was issued, and was by him, by virtue of his said office of Constable, levied upon a barn of to *300 bacco, as the property of the defendant, Reese, on the — day of January, 1859, and that the defendants after-wards converted the same,” etc.; to which the defendants filed three pleas: 1st, Not guilty; 2d, that the plaintiff had no valid judgment or execution; and 3d, that before the alleged levy of the plaintiff, the defendant, Reese, had sold said tobacco to defendant, McClellan; upon all of which, issues were made.
At the November Term, 1860, of said Court, the cause was tried, which resulted in a verdict and judgment in favor/of the plaintiff. Motions for a new trial, and an arrest of judgment, having been overruled, the defendant, McClellan, has prosecuted an appeal in error to this Court.
The facts necessary to be stated, are, substantially, as follows: In 1842, one H. B. Robb was a Justice of the Peace for Smith County. He has since died, and one Elijah W. Cornwell has become his successor in office; and, on the trial, proved he had the possession of the docket and papers belonging to the office of Robb. The docket was produced, upon which, in the handwriting of Robb, are the following entries, to-wit:

*301 On the 5fch of January, 1859, Cornwell, the successor of Rohb, issued a fi. fa. upon the latter entry, in the words and figures following, to-wit:
“State oe Tennessee, Smith County. — To the Sheriff, or any lawful officer, to execute and return: You are hereby commanded, that, of the goods and chattels, lands and tenements, of Elias Reese, and Cordy Reese, if to he found in your County, you make, or cause to he made, the sum of one hundred dollars and forty-six and one-fourth cents, to satisfy a judgment and costs, with interest, to satisfy a judgment that James C. Williams obtained, before H. B. Robb, Esq., on the 13th of June, 1842, against the said E. and C. Reese. Herein fail not. Given under my hand, this, the 5th day of January, 1859. E. W. Coenwell,
[Seal.] “J. P. for Smith County.”
Which, on the day of its issuance, came to the hands of the said Larkin Cornwell, who was a Constable for said County, and who, on the same day, levied the same on the tobacco in controversy, as the property of Elias Reese. The tobacco was raised by Reese in 1858, upon the land of McClellan, and at the time of the levy, was in a barn on McClellan’s land. Reese was a man of small means, and in needy circumstances; and in August, or September, .1858, when only a portion of the tobacco had been cut, he. sold the entire crop, as it then was, to McClellan, at the price of $125; and for work still necessary to be done on the tobacco, such as cutting, housing, firing, stripping, etc., which Reese agreed to do, McClellan agreed to pay the further sum of twepty-five dollars, and also agreed *302 to assist in putting it down in bulk. At the time of the levy, the crop, consisting of about 3,1*70 pounds, was all in bulk, except some two or three hundred pounds, which were still on sticks. Soon after the date of the levy, McClellan removed the tobacco from the barn, and in February, or March, following, sold it. The Justice, Cornwell, has made diligent search for the warrant in the case of J. C. Williams vs. Elias and Cordy Reese, and has been unable to find it. Witness, Glover, was a Constable for Smith County in 1842, and as such, had for collection, a note on Elias and Cordy Reese, payable to J. C. Williams; and also, a warrant founded thereon, issued by some Justice of the Peace, which he executed, and returned before Robb for trial, who proceeded to render said judgment.
There is no proof that the Justice entered any judgment upon the last warrant, or that he made any entry except upon the docket. Under this state of facts, the Circuit Judge held, and so charged the jury, “that the entry on the docket book, together with the evidence of the loss of the warrant, should be held sufficient evidence of a valid judgment.” In this we think there is error. We are aware the doctrine is well settled, that, upon grounds of public policy, if not of necessity, the proceedings of these domestic tribunals will be favored and upheld, if, upon their inspection, it can be seen they have been in substantial compliance with the requirements of the rules of law. But we think they should, in each case, show, with such reasonable certainty, what was intended, that, without resorting to parol, or other evidence de hors the proceeding, *303 we may be able to ascertain, with reasonable certainty, wbat was intended; and tbat a ‘judgment rendered by a Justice of the Peace, void upon its face, cannot be aided by reference to the proceedings or judgment in another suit.
This Court has held, that if a judgment be valid upon its face, it cannot be invalidated when it comes up collaterally, by parol or other proof, de hors the proceeding: Hum., 208. And, if such proof cannot be resorted to in a collateral proceeding, to invalidate a judgment, which, upon its face, seems to be valid, much less, as we believe, can it be resorted to even in a proceeding of similar character, to make valid a judgment, which, upon its face, is null and void. And the principle would apply, with still greater force, where the question as to the validity of the judgment, is placed directly in issue by the pleadings in the case, as in this case.
By the Act of 1835, under' which these proceedings were had, it is provided, among other things, “that every Justice shall keep, in a well bound book, a judgment and execution docket, showing in whose favor, and against whom, each is rendered, and its date and, amount,” etc. The judgment upon which the execution in this'case, was founded, does not show in whose favor it was rendered; it purports to be for the plaintiff, and, therefore, under the very liberal, not to say charitable, rules before referred to, for the construction of such proceedings, we would hold, that, by intendment, it is against the defendants; but it wholly fails to show who the plaintiff is; and in whose favor it was intended *304 to be rendered, can only be' ascertained, so far as appears in tbis record, by reference to the preceding judgment, or by resorting to parol proof, which cannot be done for that purpose.
The judgment forms the connecting link between the warrant and the execution; and, in this case, wholly fails to show its identity or connection with either. Hence, it follows, that, with the views of the law arising upon the facts disdosed in this record, we are constrained to the opinion, that the judgment upon which the execution in this case is founded, is void, and, consequently, the levy of the execution vested no title to the property in the Constable who made the levy.
But still another question is presented for our consideration. It was insisted by the plaintiff below, that the sale of the tobacco by Reese to McClellan, was fraudulent and void as to creditors of Reese; and for the purpose of showing such was the fact, introduced in evidence upon the trial, the statements and conversation of Reese, made in the absence of McClellan, after the sale, and while he was at work upon the tobacco, to which McClellan objected; but the objection was overruled. McClellan, by his counsel, asked the Court to charge the jury: “That the declarations and sayings of defendant Reese, made in the absence of McClellan while Reese was in possession of the tobacco, cutting, priging, stripping and bulking it, after a sale of it by Reese to McClellan, (if such possession was consistent with the terms of the contract between Reese and McClellan,) could not be looked to as evidence against Me- *305 Clellan,” which the Court refused to do; but instructed the jury, “ that Reese’s statements, when not in possession of the tobacco, were not evidence against McClellan; but if Reese were in possession of the tobacco, his statements were evidence against McClellan.”
In this, also, we think His Honor, the Circuit Judge, erred. It is well settled, as a general rule, that the right of a party to property, bona fide purchased by him, cannot be prejudiced by the sayings of the véndor, after the transactions, and not - in the presence of the purchaser. But, in cases where the transaction itself is attacked, upon the ground of fraud, if the vendor retain the possession of the property, inconsistently with the terms of the contract, and, consequently, in hostility to the rights of the purchaser, this rule is relaxed, and his statements in the absence of the purchaser, in refererence to the ownership, or contract, or terms upon which he holds possession of the property, may be received as evidence against the purchaser, as part of the res gestee, because such possession of the property is a badge of fraud, which, of itself, connects him with the purchaser, in the suspicion of a confederate to defeat creditors. But the bare fact of possession by the vendor, is not, of itself sufficient; for if his possession be consistent with the rights of the purchaser, and according to the terms of the contract, his statements, in the absence of the purchaser, are inadmissible as against the purchaser.
Let the judgment be reversed, and the cause remanded.